UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEVEN CARLISLE,

                      Plaintiff,

   v.                                           5:22-CV-200 (DNH/ATB)

JEFFERSON COUNTY, et al.,

                      Defendants.

STEVEN CARLISLE, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a pro se complaint together with an application to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2).

**I.    In Forma Pauperis ("IFP") Application**

A review of plaintiff's IFP application shows that he declares he is unable to pay the filing fee. (Dkt. No. 2). After reviewing his application, this court finds that plaintiff is financially eligible for IFP status.

In addition to determining whether plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S.

319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). The court has a duty to show liberality toward pro se litigants, and must use extreme caution in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and has had an opportunity to respond. However, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint sua sponte even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiff's complaint under the above standards.

**II.     Complaint**

Construing the pleading with the utmost liberality,[1] it appears that plaintiff was employed by a company called North Star during some portion of the relevant period. Plaintiff alleges that on January 29, 2022, a "confidential informant for the Jefferson

---

[1] *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).

2

County District Attorney's Office under took [sic] orders to turn a carbon monoxide causing device known as a salamander heater . . . on and off" repeatedly at North Star. (Complaint ("Compl.") at 3) (Dkt. No. 1). This caused "black smoke to be sucked into a nearby furnace duct . . . that . . . exhausts in an enclosed room with no ventilation." (*Id.*). Plaintiff alleges that the confidential informant "acted under color of law by conspiracy with intent to cause physical harm," because it was well established that since April 2013 the defendant County of Jefferson was "fully aware the plaintiff . . . has a preexisting brain injury disease." (*Id.*).

Plaintiff then alleges that confidential informants "under direct orders of Jefferson County" also engaged in the "illegal use of a forklift." (*Id.* at 4). He states that defendant John Doe Dave, another North Star employee, would "deliberately place the running forklift so high [sic] lethal amounts of carbon monoxide exhaust would travel directly in the narrow work area when [plaintiff] would be in the radiator work area," which had no ventilation. (*Id.*). Plaintiff states that forklifts of this type can emit levels of carbon monoxide that are dangerous to humans, especially those with existing health conditions. (*Id.*).

Plaintiff then states that the "defendants" arrested approximately fifty people in a state "drug bust" referred to as "Operation Gravy Train." (*Id.*). Upon plaintiff's own "investigation of such matters," he alleges that the investigative techniques utilized in Operation Gravy Train were "unlawful." (*Id.*). As example, plaintiff references the use of "spoofing text messages pretending to be direct friends," a "stingray fake cell phone tower" which "allows the police to pretend to be a friend," the use of "peoples[']

3

Facebook accounts pretending to be friends," and Jefferson County "gaining access to peoples['] bluetooth accounts and login to follow such people in [through] stores to listen to activities." (*Id.*). Plaintiff states that Jefferson County was in such "fear" of a court dismissing the arrests stemming from Operation Gravy Train, that it "went in at all costs targeting [plaintiff's] preexisting injury." (*Id.*).

Plaintiff next references an apparent lawsuit captioned "Steven Carlisle v. Davidson Paintings," and states that Jefferson County "set up next door a harassment center and used paint fumes . . . to cause daily dizziness" to the occupants of plaintiff's home, "and came on property trespassing and broke the door handle." (*Id.*). He states that after "the case" was set in Theresa Court, "the county pretended to be the court clerk, who is a lady, but mistakenly the county called using an impersonator who was a man." (*Id.*). Plaintiff states that he "dismissed the action to build a case against the Jefferson County officials." (*Id.* at 5). He generally alleges that their "use of strypeeze [sic] a paint chemical," causes dizziness and unconsciousness. (*Id.*).

Plaintiff references another lawsuit captioned "Steven Carlisle v. Simpson Fuels." (*Id.*). Plaintiff alleges that on October 26, 2020 the "defendants" worked in conspiracy with plaintiff's coworker to send plaintiff a text message while he was driving a "loaded fuel truck [through] a very busy city traffic to cause an accident . . . and . . . immediate nervousness." (*Id.*). Plaintiff states that Carlisle v. Simpson Fuels "involves . . . the County of Jefferson conspir[ing] with the owner and . . . pouring toxic to inhale chemicals [sic] . . . in home tanks so vapors come out [sic] vent pipes to disorient plaintiff." (*Id.*). Plaintiff alleges that defendants Jefferson County Sheriff

4

Colleen O'Neill, Jefferson County Legislator Scott Gray, and Jefferson County District Attorney Kristyna Mills are "jointly and directly personally responsible for an injury to plaintiff's brain that is currently in and under treatment." (*Id.*).

Plaintiff alleges several causes of action against the defendants, including conspiracy, unreasonable/excessive force, failure to intervene, and an equal protection violation under the New York State constitution. (*Id.* at 5–8). He seeks compensatory and punitive damages, injunctive relief, and attorneys fees. (*Id.* at 9).

### III. Personal Involvement

#### A. Legal Standards

It has long been established that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" and supervisory officials may not be held liable merely because they held a position of authority. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). In *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), the Second Circuit articulated standards for courts to use when determining personal involvement or supervisory liability.[2]

---

[2] These factors were:
> (1) the defendant participated directly in the alleged constitutional violation;
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

However after the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the factors articulated in *Colon* were called into question. Recently, pursuant to *Iqbal*, and in the context of the appeal of a qualified immunity issue, the Second Circuit has specifically revised its standard for determining personal involvement or supervisory liability, finding that the *Colon* factors are no longer controlling and articulating the proper standard for the courts in this circuit to utilize. *Tangreti v. Bachmann*, 983 F.3d 609, 614-19 (2d Cir. 2020).

Joining other circuits, the Second Circuit held that, after *Iqbal*, there is no "special" rule for supervisory liability. *Id.* at 618.

> Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676 . . . . "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id*. The violation must be established against the supervisory official directly.

*Id.* (quoting *Iqbal*, 556 U.S. at 676). The supervisor must have committed the violation him or herself, not by the supervision of others who committed the violation. *Id.* Likewise, the supervisor must personally display the requisite state of mind, depending on the violation at issue. *Id.*

**B.   Application**

Plaintiff has identified more than twenty individuals as named defendants in his complaint. However, plaintiff states no facts, nor does he raise any claims, relating to the majority of the defendants listed. In particular, the following named defendants are

6

not referenced at all in the body of plaintiff's complaint: Jeff Smith, Matt Timerman, Jay Donovan, Gary Pasqua, Jeff Prebish, John Doe Scott, John Doe Sam, John Doe Kim, John Doe Ronnie, John Doe Rodney, John Doe Wally, John Doe Devan, and John Doe Andrew.  (*See* Compl., *generally*).  Defendant John Doe Meritt is merely identified as a "witness."  (Compl. at 3).  It is thus unclear what, if any, actions these defendants are alleged to have taken.  Accordingly, the complaint should be dismissed as against these defendants.

## IV.   Criminal Statutes

### A.   Legal Standards

Crimes are prosecuted by the government, and not by private parties. *Corrado v. New York Office of Temporary and Disability Assist.*, No. 15-CV-7316, 2016 WL 3181128, at *5 (E.D.N.Y. June 2, 2016) (citing *Hill v. Didio*, 191 F. App'x 13, 14-15 (2d Cir. 2006)). There is no private right of action to enforce federal criminal statutes, unless the statute specifically authorizes it. *Id.* (quoting *Vasile v. Dean Witter Reynolds Inc.*, 20 F. Supp. 2d 465, 477 (E.D.N.Y. 1998) (citations omitted), *aff'd*, 205 F.3d 1327 (2d Cir. 2000)). This applies to both state and federal criminal statutes. *See Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) (citing *inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009).

### B.   Application

Plaintiff alleges that the defendants have violated 18 U.S.C. §§ 241 (conspiracy against rights) and 242 (deprivation of rights under color of law).  Both of these federal

statutes provide for criminal penalties, and there is no language in either which explicitly authorizes, or implies, a private right of action. *See Hill v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (summary order) (no private right of action for 18 U.S.C. §§ 241, 242); *Xu v. Neubauer*, 166 F. Supp. 3d 203, 207 (D. Conn. 2015) (finding no private right of action in a case in which plaintiff was attempting to enforce, among other statutes, § 241). Thus, plaintiff may not enforce these criminal statutes against any of the defendants, and the complaint may be dismissed in this regard.

V.     **Excessive Force/Failure to Intervene/Conspiracy**

   A.     **Legal Standards**

      1.     **Excessive Force/Failure to Intervene**

The right under the Fourth Amendment to be free from unreasonable search and seizure prohibits the use of excessive force by law enforcement in encounters with criminal suspects. *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014) ("The Fourth Amendment governs 'the reasonableness of the manner in which a search or seizure is conducted.' "); *Graham v. Connor*, 490 U.S. 386, 394 (1989).[3] To state a plausible Fourth Amendment excessive force claim, a plaintiff must show that the force used by the Defendants was "objectively unreasonable." *Graham*, 490 U.S. at 397. The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable police officer on the scene, and it "requires consideration of the severity of

---

[3] Although plaintiff also cites the Eighth and Fourteenth Amendment as bases for his excessive force claims, the court notes that the allegation of excessive force used against an individual who is not yet arrested or convicted is governed by the Fourth Amendment. *See Graham v. Connor*, 490 U.S. at 395 n.10 (discussing the various bases for a claim of excessive force depending upon the status of the individual).

8

the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Hemphill v. Schott*, 141 F.3d 412, 417 (2d Cir. 1998).

The Second Circuit has also recognized failure to intervene claims in the context of Fourth Amendment excessive force violations, as "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence[.]" *Simcoe v. Gray,* 577 F. App'x 38, 40 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official. *Jackson v. Mastrangelo*, 405 F. Supp. 3d 488, 493 (W.D.N.Y. 2019) (quoting *Anderson v. Branen*, 17 F.3d 552 at 557).

### 2. Conspiracy

To adequately assert a conspiracy claim under § 1983 a plaintiff must allege: (1) an agreement between two or more state actors or between a state actor and private actor; (2) to act in concert to inflict an unconstitutional injury on plaintiff; and (3) an overt act committed in furtherance of that goal causing damages. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity

9

acted in concert with the state actor to commit an unconstitutional act." *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). Put differently, a private actor acts under color of state law when the private actor "is a willful participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d at 324 (citing *Spear*, 954 F.2d at 68).

### B. Application

Liberally construed, plaintiff has alleged that defendants John Doe Dave, John Doe Jordan, Jefferson County, Jefferson County D.A. Kristyna Mills, Jefferson County Sherriff Colleen O'Neil, County Legislator Scott Gray, and Watertown Police Chief Charles Donoghue conspired to engage in certain investigatory activities involving the unreasonable use of force that caused him injury, including (1) exposing plaintiff to carbon monoxide by use of the salamander heater, (2) exposing plaintiff to carbon monoxide by use of a forklift, and (3) engaging in "activities that [preyed] upon [plaintiff's] pre existing medical condition of brain vessel damage . . . via cell phone and video live stream." (Compl. at 6).

At the outset, the complaint fails to plausibly allege a conspiracy claim under § 1983 against these defendants. Specifically, plaintiff's complaint fails to assert any factual allegations plausibly alleging an agreement or conspiracy among the defendants to engage in the acts as alleged by plaintiff, much less any unconstitutional acts, other

than the plaintiff's repeated use of the word "conspiracy." Plaintiff's allegations, even when read with the utmost of special liberality, are impermissibly vague and conclusory. *See Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds"); *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). "[A]lthough a plaintiff does not need to provide detailed factual allegations, the allegations in the complaint must be 'enough to raise a right to relief above the speculative level.'" *Flores v. Levy*, No. 07-CV-3753, 2008 WL 4394681, at *9 (E.D.N.Y. Sep. 23, 2008) (quoting *Twombly*, 550 U.S. at 554). In this case, plaintiff's allegations do not rise above speculative musings, suggesting without any plausible basis that county and city officials were using his co-workers as confidential informants to purportedly inflict harm upon him at his place of employment.

Because plaintiff has failed to plausibly allege a conspiracy claim under § 1983, plaintiff's excessive force claims against defendants John Doe Dave and John Doe Jordan are subject to dismissal for lack of state action, to the extent plaintiff has not established that these private citizens and the named state officials jointly participated or conspired to violate plaintiff's federal rights. *See Moritz v. Town of Warwick*, No. 15-CV-5424, 2016 WL 3248494, at *3 (S.D.N.Y. June 9, 2016) (quoting *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996)) ("To establish joint action, a plaintiff must show that the private citizen and the state official share a common

11

unlawful goal; the true state actor and the jointly acting private party must agree to deprive the plaintiff of rights guaranteed by federal law.").

Nor do plaintiff's excessive force claims against the individually named state actors survive initial review as pled.  Absent any conspiracy among the defendants, plaintiff has failed to plausibly allege that Sheriff O'Neil, Chief Donogue, D.A. Mills,[4] or Mr. Gray had any personal involvement in the purportedly injurious conduct. Plaintiff specifically alleges that the salamander and forklift at issue were being operated by his co-workers at North Star.  (Compl. at 3–4).  As best this court can tell, the "cell-phone and video-live stream" activities which gave rise to his alleged injuries were also performed by one of his co-workers. (*Id.* at 5). Because plaintiff has failed to allege how any of these state actors, "through their own individual actions," violated the Constitution, plaintiff's § 1983 claims against them fail to state a claim.[5]  *See McNair v. Ponte*, No. 17 Civ. 2976, 2020 WL 3402815, at *4 (S.D.N.Y. June 18, 2020) (plaintiff failed to sustain excessive force claim against moving defendant where no evidence that moving defendant used force against him).[6]

---

[4] Had plaintiff plausibly stated a claim of excessive force against D.A. Mills, it is unlikely that she would be entitled to absolute immunity in this case, because the district attorney's conduct as alleged appears to take place in her investigative capacity, as opposed to being associated with the conduct of litigation or potential litigation.  *See Buari v. City of New York*, 530 F. Supp. 3d 356, 379 (S.D.N.Y. 2021) ("[A]bsolute immunity generally does not apply 'where formal proceedings have not begun and the prosecutor is acting in an investigative capacity.' ") (quoting *Moye v. City of New York,* No. 11 Civ. 316, 2012 WL 2569085, at *6 (S.D.N.Y. July 3, 2012).

[5] In the absence of any viable excessive force claims, there can be no recognizable claim for failure to intervene.  *See Sankara v. Plaskett*, No. 15-CV-8470, 2017 WL 4444250, at *5 (S.D.N.Y. Oct. 4, 2017) ("Failure to intervene claims are contingent upon the disposition of the primary claims underlying the failure to intervene claim.")

[6] To be sure, the issues with plaintiff's excessive force and failure to intervene claims are not limited to personal involvement deficiencies.  The complaint is at times unintelligible and confusing,

Finally, plaintiff has failed to plausibly allege liability against Jefferson County. Where a plaintiff seeks to impose liability on a municipality, he must allege that the constitutional violation was caused by "action pursuant to official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978)). "Municipalities are not subject to § 1983 liability based on their employees' conduct unless the challenged action was performed pursuant to a municipal policy or custom." *Ost v. Allegany Cty.*, No. 17-CV-847, 2019 WL 1517560, at *2 (W.D.N.Y. Apr. 8, 2019) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. at 694; *see also Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 121 (1992).

Here, plaintiff does not allege any municipal policy, persistent custom, or widespread practice sufficient to impose liability under *Monell,* but merely cites in conclusory fashion to "defendants['] deficient policies and practices." (Compl. at 1). Otherwise, plaintiff generally refers to actions taken by unidentified representatives of "the county," such as trespassing onto his property and/or "pretending to be a court clerk." (*Id.* at 4). To the extent these allegations could even sustain a § 1983 action, the liability of said unnamed county officials cannot be imputed onto the county defendant under the theory of respondeat superior, as alleged. Otherwise, plaintiff has

---

and suffers from various Rule 8 deficiencies which would also subject it to dismissal. *See Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (Dismissal is appropriate where the complaint is "so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised.") (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). For example, to the extent plaintiff alleges excessive force in connection with the salamander heater, he does not provide any facts to this court connecting the allegedly culpable use of such a machine with injuries he sustained as a result thereof. (Compl. at 3).

13

failed to plead the required causal connection between an official policy or unofficial practice of Jefferson County, and the deprivation of his constitutional rights. *See Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability.").

## VI. Claims Under New York State Law and Constitution

Plaintiff also appears to raise an equal protection claim under the New York State Constitution, along with a claim pursuant to New York Civil Rights Law § 40–c. (Compl. at 8). With respect to the former, Article 1, § 11 of the New York State Constitution States:

> No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

N.Y. Const., art. I, § 11. In this case, plaintiff has not alleged membership in a class protected under the New York State Constitution's Equal Protection Clause, nor has he asserted any facts to support that defendants' actions occurred due to his membership in a protected class, as required to bring such a claim.

Moreover, "[a]lthough federal courts have permitted damage claims for equal protection claims arising out of the New York State Constitution, such claims are only permitted when it is determined that the 'plaintiffs have no alternative remedies that would protect their interests.'" *Glass v. New York Supreme Ct. App. Div.*, No. 1:17-CV-226(LEK/CFH), 2017 WL 9487181, at *5 n. 9 (N.D.N.Y. Apr. 26, 2017), *report and*

*recommendation adopted as modified*, 2017 WL 2628876 (N.D.N.Y. June 19, 2017); *see also Gandhi v. NYS Unified Ct. Sys.*, No. 1:20-CV-120(LEK/DJS), 2020 WL 3453553, at *6 (N.D.N.Y. June 24, 2020), *report and recommendation adopted*, 2020 WL 5651680 (N.D.N.Y. Sept. 23, 2020). Accordingly, even if plaintiff had adequately pled an equal protection claim under the New York State Constitution, this court would still recommend its dismissal to the extent plaintiff could pursue such a claim under the Fourteenth Amendment. *See Glass v. New York Supreme Ct. App. Div.,* 2017 WL 9487181 at *5 n. 9; *Gandhi v. NYS Unified Court Sys.,* 2020 WL 3453553, at *6.

Plaintiff also asserts a claim under New York Civil Rights Law § 40-c. *See* N.Y. Civ. Rights Law § 40-c (McKinney). Inasmuch as this court is recommending that plaintiff's federal claims against the defendants be dismissed, it also recommends that the district court decline to exercise supplemental jurisdiction over plaintiff's state law claim, without prejudice. *See Kolari v. New York Presbyterian Hosp.*, 445 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed).

## VII. **Opportunity to Amend**

### A. **Legal Standards**

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

**B.     Application**

The claims based on criminal statutes may be dismissed with prejudice as against each named defendant, because these statutes do not provide for private causes of action. Plaintiff's equal protection claim under the New York State Constitution should also be dismissed with prejudice, to the extent this claim, if properly alleged, could be brought under the Fourteenth Amendment. Plaintiff's claim under New York Civil Rights Law § 40-c should be dismissed, without prejudice, in light of the court's determination not to exercise supplemental jurisdiction.

At this juncture, the court will also recommend dismissing plaintiff's § 1983 claims of conspiracy, excessive force, and failure to intervene against the numerous defendants named in the complaint. Although this court has serious doubts about the plaintiff's ability to proceed against these defendants, the court cannot state with certainty that plaintiff would not be able to amend his complaint to properly state a claim. If plaintiff chooses to amend his complaint, he must specifically set forth the personal involvement of each named defendant relative to the conduct alleged to have violated his constitutional rights. He must also state the basis for any claim that a particular defendant was a state actor or was a conspirator with a state actor in connection with a constitutional violation.

If the court approves this recommendation and allows plaintiff to submit a proposed amended complaint, plaintiff should be warned that any amended complaint must be a ***complete and separate pleading***. Plaintiff must state all of his claims in the new pleading and may ***not*** incorporate by reference, any part of his original complaint.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) is **GRANTED FOR PURPOSES OF FILING** at this time, and it is

**RECOMMENDED**, that to the extent plaintiff bases his complaint upon criminal statutes, those claims be **DISMISSED WITH PREJUDICE** as against all of the named defendants, and it is

**RECOMMENDED,** that any claims alleged by plaintiff under the Equal Protection Clause of the New York State Constitution be **DISMISSED WITH PREJUDICE** as against all of the named defendants, and it is

**RECOMMENDED,** that any claims by plaintiff under New York Civil Rights Law § 40-c be **DISMISSED WITHOUT PREJUDICE** as against all of the named defendants, and it is

**RECOMMENDED,** that any conspiracy, excessive force, and/or failure to intervene claims alleged by plaintiff under § 1983 as against all of the named defendants be **DISMISSED WITHOUT PREJUDICE** to plaintiff amending his complaint, and it is

**RECOMMENDED**, that if the District Judge adopts this recommendation, plaintiff be given forty-five (45) days to amend his complaint to the extent authorized, and that plaintiff be advised that any amended pleading must be a **COMPLETE PLEADING, WHICH WILL SUPERCEDE THE ORIGINAL**, and that plaintiff must include all the remaining facts and causes of action in the amended complaint. **No facts or claims from the original complaint may be incorporated by reference**, and it is

**RECOMMENDED**, that if the district court adopts this recommendation, and plaintiff files a proposed amended complaint, the proposed amended complaint be returned

to me for review of the amended complaint and any further orders relating to service on the defendants, and it is

**ORDERED**, that while plaintiff may file objections to this Order and Report-Recommendation, before plaintiff submits any amended pleading, he should wait for the District Court to rule on the above Orders and Recommendations.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 17, 2022

Andrew T. Baxter
U.S. Magistrate Judge